IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sandra Manker Pinckney, | ) | C/A No.: 1:15-2927-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.     Relevant Background

A.     Procedural History

On June 7, 2012, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on January 15, 2009. Tr. at 176–79 and 180–85. Her applications were denied initially and upon reconsideration. Tr. at 113–16, 117–20, 122–23, and 124–

25. On November 19, 2013, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Richard L. Vogel. Tr. at 27–46 (Hr'g Tr.). The ALJ issued an unfavorable decision on January 21, 2014, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 10–26. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on July 24, 2015. [ECF No. 1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 55 years old at the time of the hearing. Tr. at 29. She completed high school. Tr. at 30. Her past relevant work ("PRW") was as a cook, a cashier, and a security guard. Tr. at 31–33. She alleges she has been unable to work since January 1, 2011.[1] Tr. at 30.

2.     Medical History

Plaintiff presented to Beaufort Memorial Hospital on February 13, 2009, with a complaint of left shoulder pain. Tr. at 283–84. She was diagnosed with left shoulder bursitis. Tr. at 284. On March 10, 2009, an x-ray of Plaintiff's left shoulder was unremarkable. Tr. at 281.

---

[1] Plaintiff amended her alleged onset date ("AOD") to January 1, 2011, because she was found to be "not disabled" through an administratively final decision dated December 30, 2010. Tr. at 30–31.

Plaintiff was admitted to Beaufort Memorial Hospital on June 6, 2010, for chest pain and generalized myalgias. Tr. at 273. She was diagnosed with a viral syndrome, generalized myalgia, insulin-dependent diabetes, and gastroesophageal reflux disease ("GERD"). Tr. at 271. Walter Eugene Gasser, M.D. ("Dr. Gasser") indicated Plaintiff's diabetes was "out-of-control" and advised her to increase her dosage of Lantus to 30 units at bedtime; to follow up in the outpatient diabetic clinic; and to discontinue use of aspirin and nonsteroidal anti-inflammatory drugs ("NSAIDS"). Tr. at 271–72.

Plaintiff presented to Malcolm Horry, M.D. ("Dr. Horry"), with symptoms of a urinary tract infection on October 22, 2010. Tr. at 299. Dr. Horry prescribed Macrobid for acute cystitis and refilled Plaintiff's other prescriptions. Tr. at 299–300.

On December 8, 2010, Plaintiff presented to Leland Stoddard, M.D. ("Dr. Stoddard"), for a consultative examination. Tr. at 287–90. She complained of bilateral knee pain that was aggravated by prolonged standing, kneeling, and squatting and rising after prolonged periods of sitting. Tr. at 289. She reported occasional swelling and crepitate sensation in her knees and tingling and numbness that radiated from her buttocks through her legs. *Id.* She indicated she experienced chronic back pain that was exacerbated by prolonged sitting, bending, and lifting. *Id.* She also complained of chronic neck pain. *Id.* Dr. Stoddard indicated Plaintiff walked with a normal gait and generally had about 80% normal range of motion ("ROM") in her neck, 30 to 40% normal ROM in her back, and 80% normal ROM in her shoulders. *Id.* Plaintiff had mild crepitus in her shoulders and knees. *Id.* Dr. Stoddard noted the following abnormalities on ROM testing: cervical flexion reduced to 40 degrees (50 degrees normal); cervical extension

reduced to 60 degrees (50 degrees normal); cervical lateral flexion reduced to 35 degrees (45 degrees normal); cervical rotation reduced to 70 degrees (80 degrees normal); lumbar flexion reduced to 40 degrees (90 degrees normal); lumbar extension reduced to 10 degrees (25 degrees normal); lumbar lateral flexion reduced to 10 degrees (25 degrees normal); left shoulder abduction reduced to 130 degrees (150 degrees normal); bilateral shoulder forward elevation reduced to 120 degrees (150 degrees normal); bilateral shoulder internal rotation reduced to 70 degrees (80 degrees normal); bilateral shoulder external rotation reduced to 80 degrees (90 degrees normal); and bilateral knee flexion reduced to 130 degrees (150 degrees normal). Tr. at 287. Dr. Stoddard also noted that Plaintiff demonstrated an abnormal squat, sensory loss, joint abnormality, and abnormal reflexes. Tr. at 288. He noted Plaintiff had no abnormalities in her elbows, wrists, hands, hips, feet, and ankles. Tr. at 289. His diagnostic impressions were degenerative disc disease with possible cervical and lumbar spinal stenosis and intermittent radicular symptoms; rotator cuff pathology in both shoulders with possible impingement syndrome versus tear; and early degenerative arthritis in both knees. *Id.* Dr. Stoddard noted that he saw Plaintiff for a one-time independent medical examination, but concluded that she was "substantially disabled from most occupations" at the time of the examination. Tr. at 290.

Plaintiff followed up with Dr. Horry on January 7, 2011, with complaints of leg weakness and general fatigue over the past five to six days. Tr. at 295. She also reported a rash on her arms, dark urine, and vaginal discharge. *Id.* Aside from a rash, Dr. Horry observed no abnormalities on physical examination. Tr. at 296–97. He diagnosed a yeast

infection, diabetes, hyperlipidemia, hypertension, acute cystitis, and dermatophytosis; prescribed an antibiotic; refilled Plaintiff's other medications; and referred her for lab work. Tr. at 297.

Plaintiff presented to nurse practitioner Carolyn Davis, APRN ("Ms. Davis"), for a Department of Transportation annual physical on January 11, 2011. Tr. at 368–69. She indicated she was planning to drive a bus. Tr. at 368. She denied pain, palpitations, diaphoresis, dyspnea, facial droop, limb weakness, gait disturbance, polydipsia, polyuria, nausea, vomiting, diarrhea, constipation, weight change, chest pain, paresthesias, rash, earache, joint pain, and abdominal pain. *Id.* She reported occasional headaches. *Id.* Ms. Davis assessed a diagnosis of obesity and indicated Plaintiff would need to follow up with Dr. Horry for the physical. Tr. at 369.

On January 26, 2011, Plaintiff presented to nurse midwife Clarice Nichole Wardlaw, CNM ("Ms. Wardlaw"), for a gynecological examination. Tr. at 365. She complained of vaginal itching and pelvic pain, but denied experiencing other pain. *Id.* Ms. Wardlaw observed Plaintiff to have an enlarged uterus, but noted no other abnormalities on examination. Tr. at 366–67. She indicated Plaintiff was oriented times three; had intact recent and remote memory, judgment, and insight; and had a normal mood and affect. Tr. at 367. She diagnosed a uterine leiomyoma and referred Plaintiff for a pelvic ultrasound and to a doctor for fibroid management. *Id.*

On February 16, 2011, Plaintiff's hemoglobin A1c was elevated at 8.7%. Tr. at 292. Dr. Horry instructed Plaintiff to increase her insulin by one unit per day until her morning glucose was 100 mg/dL. *Id.* On February 27, 2011, Dr. Horry indicated

Plaintiff's cholesterol was good, but her diabetes was not controlled. *Id.* He instructed Plaintiff to increase her dosage of Lantus. *Id.*

Plaintiff presented to the emergency room ("ER") at Hampton Regional Medical Center on February 19, 2011, and complained of a sore throat, cough, earache, chest pain, and body aches. Tr. at 492. She was diagnosed with a cold. Tr. at 499.

Plaintiff presented to Cecil T. McElveen, M.D. ("Dr. McElveen"), on March 30, 2011. Tr. at 360. Dr. McElveen indicated Plaintiff's glucose was elevated and noted she was caring for children and was noncompliant with her diet. *Id.* Plaintiff endorsed symptoms of back pain, diffuse aches, and fatigue. *Id.* Dr. McElveen observed no abnormalities on physical examination and indicated Plaintiff was oriented times three and had a normal mood and affect. *Id.* Plaintiff's serum glucose was 288 mg/dL and her hemoglobin A1c was 9.8%.[2] Tr. at 375. Dr. McElveen assessed diabetes mellitus, hypertension, other malaise and fatigue, and obesity. Tr. at 361. He instructed Plaintiff to start taking 500 milligrams of Metformin per day and to follow up in six weeks. *Id.*

On June 16, 2011, Dr. McElveen indicated Plaintiff's glucose had improved and that she was taking Metformin only once a day. Tr. at 356. Plaintiff reported a burning sensation from her chest to her stomach that was sometimes relieved with use of Tums. *Id.* Her glucose was within the normal range at 98. Tr. at 373. Dr. McElveen indicated Plaintiff was controlling her diabetes well and should continue her present medications, but increase Metformin to twice a day. Tr. at 357.

---

[2] The test results indicate the normal serum glucose range is between 65 mg/dL and 99 mg/dL and the normal A1c range is between 4.8% and 5.6%.

Plaintiff presented to the ER at Barnwell County Hospital on July 25, 2011, with a rash. Tr. at 390. She received a Solumedrol injection and was discharged with instructions to take Benadryl and Diflucan. Tr. at 393.

Plaintiff again presented to the ER at Barnwell County Hospital on August 19, 2011, and reported headache, nausea, periumbilical abdominal pain, right flank pain, and urinary frequency and urgency. Tr. at 394. Lab tests were negative. Tr. at 399–402. Jane Laroche, M.D., diagnosed cystitis, musculoskeletal and abdominal wall pain, and GERD. Tr. at 397.

Plaintiff presented to Dr. McElveen for routine follow up on September 12, 2011. Tr. at 353. She complained of persistent GERD and a rash, but denied experiencing pain. *Id.* She indicated her GERD could be controlled with Prevacid, but indicated it was too expensive. *Id.* Dr. McElveen indicated Plaintiff was "well appearing," "well nourished," and "in no acute distress." *Id.* He described her mental state as being oriented times three and having normal mood and affect. *Id.* Aside from some lesions on Plaintiff's skin, he noted no abnormalities on examination. *Id.* Plaintiff's glucose was elevated at 295 mg/dL. Tr. at 372. Dr. McElveen instructed Plaintiff to return to the office in one to two days for a fasting lipids test and a skin biopsy. Tr. at 354.

On November 27, 2011, Plaintiff was transported to Coastal Carolina Medical Center by ambulance, after she was assaulted by her brother. Tr. at 336. She complained of pain in her head, chest, back, neck, and left knee. *Id.* A cardiovascular examination was normal. Tr. at 337. Plaintiff had moderate tenderness on the top of her head, in her left occipital area, at the base of her skull on the left side, at the back of her head on the

7

right side, in her right occipital area, and at the base of her skull on the right side. *Id.* She had tenderness to the posterior midline of her cervical spine. *Id.* She complained of mild tenderness in her chest. *Id.* She endorsed moderate back pain and complained of pain with ROM. *Id.* Paul Zorch, M.D., observed Plaintiff to have tenderness at T11, T12, L1, L2, and L3. *Id.* He noted tenderness and decreased ROM in Plaintiff's left knee. *Id.* A computed tomography ("CT") scan of Plaintiff's brain was normal. Tr. at 340. A chest x-ray was normal. Tr. at 341. An x-ray of Plaintiff's lumbar spine showed no compression fracture or subluxation; intact lumbar pedicles and transverse processes; no disc space narrowing; and intact posterior elements. *Id.* An x-ray of Plaintiff's left knee showed an intact tibial plateau and fibular head; no femoral condylar fracture; an intact patella; and no joint effusion. *Id.* A CT of Plaintiff's cervical spine indicated no acute compression fracture or subluxation; no paravertebral soft tissue swelling; an intact odontoid process; a normal C1-2 relationship; no bony encroachment on the cervical spinal canal; intact pedicles and posterior elements; and no acute facet joint abnormality. Tr. at 343. The attending physician diagnosed Plaintiff with multiple contusions. Tr. at 335.

Plaintiff followed up with Ms. Davis on December 9, 2011. Tr. at 351–52. She complained of being tired and reported her fasting blood glucose ranged from 140 to 200. Tr. at 351. She reported intermittent joint aches. *Id.* Ms. Davis observed no abnormalities on physical examination and noted Plaintiff was "oriented x 3"; had intact recent and remote memory, judgment, and insight; and had a normal mood and affect. *Id.* Plaintiff's blood glucose was 308 mg/dL and her hemoglobin A1c was elevated at 12.1%. Tr. at 370. Ms. Davis recommended Plaintiff walk and stretch daily, avoid sweet drinks,

8

decrease her carbohydrate intake, increase her insulin dosage to 22 units each night, discontinue Zantac, and take Prilosec or Tums. Tr. at 352.

Plaintiff presented to Ms. Wardlaw for a gynecological examination on April 25, 2012. Tr. at 345–47. She denied experiencing pain, but indicated her arms and legs were "achy." Tr. at 345. Ms. Wardlaw described Plaintiff as "[w]ell appearing," "well nourished," "in no distress," "oriented x 3," and as having a "normal mood and affect." Tr. at 346. She indicated Plaintiff had intact recent and remote memory, judgment, and insight. Tr. at 347. She ordered a pelvic ultrasound for uterine fibroids, a routine pap smear, and a routine mammogram. *Id.*

Plaintiff presented to the ER at Barnwell County Hospital on July 6, 2012, complaining of itching and pain as a result of ant bites on her feet. Tr. at 382. Mathew Thomas, M.D., observed no abnormalities on physical examination and described Plaintiff as having a pleasant affect, cooperative motor behavior, normal speech pattern, and normal thought processes. Tr. at 387–88. Robert Rhame, M.D., instructed Plaintiff to avoid scratching, to soak her feet in Epsom salt, to take Zyrtec, and to apply Bactroban ointment three times daily. Tr. at 385.

On July 17, 2012, state agency consultant Timothy Laskis, Ph. D. ("Dr. Laskis"), reviewed Plaintiff's medical records and completed a psychiatric review technique form ("PRTF"). Tr. at 63–64. He considered Listing 12.04 for affective disorders and assessed no restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Tr. at 63. Dr. Laskis found that depression was a nonsevere impairment because Plaintiff was

not taking psychotropic medications; made no complaints of depressive symptoms to her regular physician; and had a normal mental status on her most recent examination. Tr. at 64.

State agency medical consultant Warren F. Holland, M.D. ("Dr. Holland"), completed a physical residual functional capacity ("RFC") assessment on July 17, 2012. Tr. at 65–66. He indicated Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps and stairs, kneel, and crouch; and never climb ladders, ropes, or scaffolds. *Id.*

Plaintiff presented to the ER at Hampton Regional Medical Center on August 28, 2012, with complaints of a headache and left eye injury. Tr. at 503. She indicated a man punched her in the head. *Id.* A facial CT scan was normal. Tr. at 511. Sonny Park, M.D., diagnosed a facial contusion and corneal abrasion to the left eye. Tr. at 507.

Plaintiff presented to Meryl Snow, D.O. ("Dr. Snow"), on September 5, 2012, and reported she had been unable to afford treatment over the past nine months because she was unemployed. Tr. at 405. She complained of a headache, blurred vision, difficulty sleeping, decreased appetite, and left-sided body pain that had occurred over the prior two-day period. *Id.* She reported a tearful mood as a result of financial stress and indicated she was not monitoring her blood pressure or blood glucose. *Id.* Plaintiff's hemoglobin A1c was 12.5% and her serum glucose was 188 mg/dL. Tr. at 433, 434. Dr. Snow observed Plaintiff to have full ROM and normal gait and station in her extremities

and tenderness to palpation over her sternum and in her bilateral deltoids, upper back, and anterior thighs. Tr. at 406. She described Plaintiff's mood and affect as normal. Tr. at 407. She assessed poorly-differentiated left-sided myalgias, atypical chest pain, diabetes, hypertension, history of GERD, and history of allergic rhinitis. *Id.*

Plaintiff followed up with Dr. Snow on October 3, 2012. Tr. at 513. She complained of urinary pressure and chest discomfort and indicated she was coughing up mucus. *Id.* Dr. Snow observed Plaintiff to have full ROM of all extremities, normal gait and station, clear lungs without wheezing or rhonchi, no edema, no gross neurological deficits, and normal mood and affect. Tr. at 514. Dr. Snow prescribed Ventolin based on Plaintiff's indication that she had been diagnosed with asthma in the past. Tr. at 514.

On November 29, 2012, state agency medical consultant Rebecca Meriwether, M.D. ("Dr. Meriwether"), reviewed Plaintiff's medical records and assessed the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. Tr. at 90–92.

State agency consultant Leslie Burke, Ph. D. ("Dr. Burke"), reviewed Plaintiff's medical records and completed a PRTF on December 4, 2012. Tr. at 88–90. She considered Listing 12.04, but found Plaintiff's depression to be nonsevere because she had no restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Tr. at 89. Dr. Burke acknowledged that Plaintiff was tearful during a recent medical visit, but

11

noted that she had intact learning and functional abilities and that her physician prescribed no medications. *Id.*

Plaintiff presented to Stephen Keil, M.D. ("Dr. Keil"), for an initial visit on May 21, 2013. Tr. at 519. She indicated she had not been seen by a primary care provider since October 2012 and had run out of insulin three months earlier. *Id.* Plaintiff's glucose was elevated at 317 mg/dL. Tr. at 528. Dr. Keil instructed Plaintiff to restart 10 units of Humulin 75/25 insulin twice daily and to continue taking 500 milligrams of Metformin twice daily. Tr. at 519. He recommended Plaintiff continue taking Pravastatin and Lisinopril/Hydrochlorothiazide and start taking Omeprazole for acid reflux. *Id.*

Plaintiff followed up with Dr. Keil on June 4, 2013, and reported improved blood glucose. Tr. at 519. Dr. Keil instructed her to continue monitoring her blood glucose level twice a day and to follow up in three weeks. *Id.*

On June 25, 2013, Plaintiff reported to Dr. Keil that she was generally doing well. Tr. at 518. She endorsed chronic dyspnea on exertion, but Dr. Keil indicated it was apparently related to deconditioning. *Id.* Dr. Keil stated Plaintiff had lost about two pounds as a result of adhering to a more appropriate diet and that her blood glucose was improving. *Id.* He increased her morning insulin dose to 16 units. *Id.*

On August 6, 2013, Plaintiff reported that her blood glucose had been running between 120 and 175. Tr. at 517. She complained of pain in her right arm and right shoulder and through her back and right hip. *Id.* She also endorsed occasional blurred vision. *Id.* She indicated she was easily frustrated and reported a history of depression, but denied taking any medication for depression. *Id.* Dr. Keil indicated Plaintiff's A1c

had decreased from 14% to 9% since she restarted insulin. *Id.* He indicated Plaintiff's physical examination was unremarkable. *Id.* He increased Plaintiff's afternoon insulin dose to 16 units and instructed her to return in two months. *Id.*

C.    The Administrative Proceedings

1.    The Administrative Hearing

At the hearing on January 21, 2014, Plaintiff testified she was unable to work because of pain in her neck, legs, and shoulders; difficulty rotating her neck; and swelling in her knees. Tr. at 34. She indicated she also felt depressed. *Id.* She stated she had been diagnosed with diabetes that affected her eyesight, as well as asthma and eczema. Tr. at 38, 40, and 42. She endorsed daily headaches. Tr. at 41. She stated she was 5' 3½" tall and weighed 198 pounds. Tr. at 40.

Plaintiff testified she was no longer able to dance, run, or hang clothes on a line because of pain in her neck, shoulder, and arm. Tr. at 34. She described her pain as a burning and aching pain and indicated her left side was more painful than her right. Tr. at 35. She stated she was unable to lift her arms overhead or to push or pull heavy objects. *Id.* She endorsed pain and daily swelling in her left knee that was exacerbated by walking, sitting, and rising from a seated position. Tr. at 36, 37. She indicated she became short of breath and experienced knee pain when climbing stairs. Tr. at 36. She testified she had difficulty controlling her blood glucose and stated her typical readings ranged from 128 to 150. Tr. at 38. She indicated she had difficulty sleeping at night because she tossed and turned and experienced skin irritation as a result of eczema. Tr. at 42.

Plaintiff testified she could only take 10 to 15 steps before developing shortness of breath. Tr. at 37. She stated she could stand for no more than 10 minutes at a time because of pain in her knees, legs, and back. Tr. at 44. She indicated she did not know how long she could sit at one time, but endorsed a need to change positions. *Id.* She estimated she could lift about 10 pounds. Tr. at 45.

Plaintiff testified she treated her knee pain by applying rubbing alcohol, using a heating pad, and taking Tylenol twice a day. Tr. at 37–38. She indicated she took Humalog 75/25 and Metformin for diabetes. Tr. at 39. She stated she took a daily nap that lasted for one to two hours. Tr. at 41. She denied having discussed possible surgical intervention with her doctors. *Id.* She indicated she had received three or four injections to her back, but had not received any injections since approximately 2008. Tr. at 45–46.

Plaintiff testified she was easily frustrated and sometimes had difficulty getting along with others. Tr. at 42. She stated she seldom socialized with friends, but continued to socialize with family members. *Id.* She indicated she shopped for groceries and washed clothes, but was no longer able to sweep, vacuum, or clean dishes. Tr. at 43. She stated she required assistance to prepare meals and shop for groceries. Tr. at 43–44.

2.    The ALJ's Findings

In his decision dated January 21, 2014, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.
2.    The claimant has not engaged in substantial gainful activity since January 1, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

14

3.  The claimant has the following severe impairments: degenerative disk disease; degenerative joint disease of bilateral knees; bursitis of the right shoulder; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) and as follows: to lift and carry items weighing 10 pounds frequently and 20 pounds occasionally; to stand and walk for 6 hours in an 8-hour day; to sit for 6 hours in an 8-hour day; and to push and pull occasionally.

6.  The claimant is capable of performing past relevant work as a cashier (DOT 211.462-014; light), a security guard (DOT # 372.667-034; light), and a cook (DOT # 313.374-014; light). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. at 15–21.

II.  Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)  the ALJ did not perform a function-by-function analysis to assess Plaintiff's RFC and erroneously found that she was capable of performing her PRW; and

2)  substantial evidence does not support the ALJ's weighing of Dr. Stoddard's opinion.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146

impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

(1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

> B.     Analysis

>> 1.     RFC Assessment and Ability to Perform PRW

Plaintiff argues the ALJ did not properly assess her RFC based on the evidence of record. [ECF No. 10 at 6]. She maintains the ALJ erred in finding that she could perform her PRW without first determining whether the functions required by her PRW were precluded by her impairments. *Id.*

The Commissioner argues the ALJ assessed Plaintiff's RFC based on the evidence of record. [ECF No. 12 at 7]. She maintains Plaintiff neglects to cite any important evidence that the ALJ overlooked. *Id.*

To properly assess a claimant's RFC, the ALJ must ascertain the limitations imposed by the individual's impairments and determine her ability to perform work-related physical and mental abilities on a regular and continuing basis. SSR 96-8p. The ALJ should consider all the claimant's allegations of physical and mental limitations and restrictions, including those that result from severe and nonsevere impairments. *Id.* "The RFC assessment must include a narrative discussion describing how all the relevant evidence in the case record supports each conclusion and must cite specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." *Id.* The ALJ must also consider and explain how any material inconsistencies or ambiguities in the record were resolved. *Id.* "The RFC assessment must include a

discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* The Fourth Circuit has held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

A claimant will generally be found "not disabled" if her RFC allows her to meet the physical and mental demands of her PRW as actually performed or as customarily performed throughout the economy. SSR 82-62. An ALJ must make the following specific findings of fact to support a determination that the claimant can perform PRW: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of her PRW; and (3) a finding of fact that her RFC would permit a return to her PRW. *Id.* To find that the claimant's RFC would allow her to perform her PRW, the ALJ must evaluate her statements about PRW requirements she can no longer meet, the medical evidence that pertains to Plaintiff's limitations, and any other evidence of record that may be relevant. *Id.*

The ALJ determined Plaintiff had the RFC to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and further explained that Plaintiff was capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally; standing and walking for six hours in an eight-hour day; sitting for six hours in an eight-hour day; and pushing and pulling occasionally. Tr. at 18. Having found

that Plaintiff was capable of performing the full range of light work, he found that Plaintiff could perform her PRW as a security guard, cook, and cashier because these jobs were all classified as "light" in the *DOT*. Tr. at 21.

The ALJ's decision shows that he considered Plaintiff's statements about her limitations, but rejected some of them based on her statements to her physicians, her physicians' observations, and the objective findings that showed her to have fewer limitations than she alleged. *See* Tr. at 19–20. He found that Plaintiff's impairments would reasonably limit her to lifting and carrying 10 pounds frequently and 20 pounds occasionally, standing and walking for six hours in an eight-hour day, sitting for six hours in an eight-hour day, and occasionally pushing and pulling, but that her physical examinations revealed no objective evidence that would suggest her impairments imposed more significant limitations. Tr. at 18, 19. He noted that the assessed RFC was supported by Plaintiff's normal gait, station, and ROM; an absence of evidence of significant joint effusion or swelling; and the presence of more reports of her having full energy and activity than complaints of fatigue. Tr. at 19. The ALJ found that Plaintiff's depression imposed no work-related limitations because she was routinely described as having normal mood and affect and demonstrated no evidence of psychomotor retardation, impaired thought processing, suicidal ideation, delusions, or hallucinations. Tr. at 16. He specifically rejected Plaintiff's allegation that she could not stand for more than 10 minutes at a time or lift more than 10 pounds based on her statements to her physician that she had normal activity and energy levels. Tr. at 19. The ALJ rejected Plaintiff's allegation that she was unable to work as inconsistent with her prior statements

21

to her physician that she wanted to work and felt better when she was working. *Id.* The ALJ considered Plaintiff's conservative treatment of her alleged pain, which consisted of applying rubbing alcohol and using over-the-counter medication. *Id.* The ALJ's reasons for giving some of Plaintiff's alleged limitations limited weight is supported by the medical evidence summarized above, which evidences few complaints and objective findings to support Plaintiff's allegations during the relevant period. In the absence of an argument from Plaintiff as to specific credibly-established functional limitations the ALJ omitted from the assessed RFC, the undersigned recommends the court find the RFC to be supported by substantial evidence. Thus, in making a finding of fact as to Plaintiff's RFC, the ALJ made the first of the three factual findings required by SSR 82-62.

The undersigned recommends the court find the ALJ complied with the provisions of SSR 82-62 in finding Plaintiff was capable of performing her PRW. In relying on the *DOT*'s descriptions of Plaintiff's PRW and finding that its physical and mental demands were as generally described in the *DOT*, the ALJ made the second finding of fact under SSR 82-62. *See* Tr. at 21. In rejecting Plaintiff's additional allegations of limitations and finding that she was capable of performing the full range of light work, the ALJ made the third finding under SSR 82-62. If the ALJ had found that Plaintiff were capable of performing less than the full range of light work, it might have been necessary for him to obtain testimony from a VE as to whether Plaintiff's RFC would allow her meet the requirements of her PRW. However, because the ALJ found that Plaintiff was capable of performing the full range of light work, he reasonably concluded that she could perform her PRW, which was classified by the *DOT* in the light exertional category.

22

For the foregoing reasons, the undersigned recommends the court find the ALJ adequately considered the evidence of record in assessing Plaintiff's RFC and finding she was capable of performing her PRW.

2.    Substantial Evidence and Dr. Stoddard's Opinion

Plaintiff argues the ALJ's decision is not supported by substantial evidence. [ECF No. 10 at 4–5]. She maintains the ALJ grossly overestimated her level of functioning and inadequately weighed the evidence of record. *Id.* at 5. She contends the ALJ did not give appropriate weight to Dr. Stoddard's findings. [ECF No. 16 at 3].

The Commissioner argues that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet the strict standard for disability under the Act. [ECF No. 12 at 5].

Having recommended a finding that the ALJ's RFC assessment and determination that Plaintiff was capable of performing PRW were supported by substantial evidence, the undersigned examines only whether the ALJ erred in assigning no weight to Dr. Stoddard's opinion. The Social Security Administration's ("SSA's") regulations require that ALJs carefully consider medical source opinions of record. SSR 96-5p. ALJs must accord controlling weight to the opinions of treating physicians that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. However, the opinions from medical sources that apply vocational factors or that state that an individual is disabled, has an impairment that meets or equals a Listing, or has a particular RFC are considered to be opinions on issues

reserved to the Commissioner and are accorded no particular significance. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p.

If the record contains no opinion from a treating physician or if the ALJ determines the treating physician's opinion is not entitled to controlling weight, the ALJ must evaluate all the opinions of record based on the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c). SSR 96-2p. The relevant factors include (1) the examining relationship between the claimant and the medical provider; (2) the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his or her own treatment records; (4) the consistency of the medical opinion with other evidence in the record; and (5) the specialization of the medical provider offering the opinion. *Johnson*, 434 F.3d at 654; 20 C.F.R. §§ 404.1527(c), 416.927(c).

The court should not disturb the ALJ's weighing of the medical opinion evidence of record "absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624 (Table), 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam). ALJs are not required to expressly discuss each factor in 20 C.F.R. §§ 404.1527(c) and 416.927(c), but their decisions should demonstrate that they considered and applied all the factors and accorded each opinion appropriate weight in light of the evidence of record. *See Hendrix v. Astrue*, No. 1:09-1283-HFF, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010).

Here, the ALJ considered Dr. Stoddard's opinion, but provided four reasons for giving it no weight. *See* Tr. at 20. First, he noted that Dr. Stoddard's opinion was based primarily on Plaintiff's subjective complaints of pain. *Id.* Next, he acknowledged that Dr. Stoddard observed Plaintiff to have some abnormal findings on examination, but found that his findings were isolated and were inconsistent with the preponderance of evidence that showed Plaintiff to have full ROM, normal gait and stance, and no evidence of neurological deficits. *Id.* Then, he found that Dr. Stoddard's opinion was inconsistent with Plaintiff's 2011 CT scans of her neck and back that showed no abnormalities. *Id.* Finally, he stated Dr. Stoddard examined Plaintiff on only one occasion and had no treatment relationship with her. *Id.*

The undersigned recommends the court find the ALJ evaluated Dr. Stoddard's opinion based on the provisions of 20 C.F.R. §§ 404.1527 and 416.927 and adequately explained his reasons for concluding that those factors supported his decision to give no weight to the opinion. Because Dr. Stoddard opined that Plaintiff was "substantially disabled from most occupations," his opinion was one on an issue reserved to the Commissioner and was entitled to no particular significance. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although the ALJ acknowledged that Dr. Stoddard had examined Plaintiff, he cited the absence of a treatment relationship as a factor that weighed against Dr. Stoddard's opinion. *See* Tr. at 20; see also 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). He addressed the supportability factor in recognizing that Dr. Stoddard's opinion was supported by some abnormal findings during his examination, but found that Dr. Stoddard based his opinion primarily on Plaintiff's subjective

complaints. *See id.*; *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The ALJ explained that he was most persuaded to give no weight to Dr. Stoddard's opinion based on the consistency factor, which showed Dr. Stoddard's findings to be isolated and in conflict with the findings of physicians who examined Plaintiff after him and the CT scans of Plaintiff's neck and back. *See id.*; *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Because Dr. Stoddard's opinion was entitled to no particular significance and because the ALJ carefully considered the relevant factors in evaluating it, the undersigned recommends the court find that substantial evidence supported the ALJ's decision to accord it no weight.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 8, 2016                                              Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).